IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON


FREDDY S. CAMPBELL,

      Plaintiff,

v.                           Case No. 2:08-cv-1102

FRED BEANE, Detective,
SERGEANT NAPIER, Detective,
DETECTIVE TAYLOR,
DETECTIVE PALMER, and
VAN ARMSTRONG, Detective,
Metropolitan Drug Enforcement
Network Team, "MDENT,"

      Defendants.


## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court are a Motion to Dismiss filed by defendants Napier, Taylor, Palmer and Armstrong (docket sheet document # 15) and a Motion to Dismiss filed by defendant Beane (# 23). This civil action is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

On September 17, 2008, Plaintiff filed a Complaint against the defendants. On October 9, 2008, Plaintiff filed a Motion for Leave to file a Supplemental Complaint, which was granted by the court on

October 14, 2008.   Service of process was made on defendants Armstong, Palmer, Taylor and Napier by the United States Marshals Service ("USMS") on or about December 15, 2008.   Service of process was made by the USMS on defendant Beane on or about December 11, 2008, by serving the Chief of Police of the City of South Charleston, where defendant Beane works.

On January 3, 2009, defendants Napier, Taylor, Palmer and Armstrong, by counsel, filed a Motion to Dismiss (# 15) and a Memorandum of Law in support thereof (# 16).   Plaintiff was thereafter granted an extension of time to file a response to that Motion to Dismiss (# 19).   On January 20, 2009, Plaintiff filed a Response to that Motion to Dismiss (# 20).   On January 25, 2009, defendants Napier, Taylor, Palmer and Armstrong filed a Reply (# 21).   That motion is ripe for determination.

On March 9, 2009, attorney Timothy Mayo entered a Notice of Appearance on behalf of defendant Beane.   Mr. Mayo also filed a Motion to Dismiss Plaintiff's Supplemental Complaint on behalf of defendant Beane (# 23), and a Memorandum in support thereof (# 24).

On March 9, 2009, Plaintiff filed a Declaration for Entry of Default against defendant Beane for failure to answer or otherwise defend against Plaintiff's Supplemental Complaint (# 28).   This Declaration crossed in the mail with defendant Beane's Motion to Dismiss.

2

On March 12, 2009, defendant Beane filed a Response to Plaintiff's Declaration for Entry of Default (# 29) and a Memorandum in support of his Response (# 30).  On March 23, 2009, Plaintiff filed a Reply to defendant Beane's Response to Plaintiff's Declaration for Entry of Default (# 33) and a Memorandum in support thereof (# 34).

On March 30, 2009, Plaintiff filed a Motion to Stay concerning defendant Beane's Motion to Dismiss, and plaintiff's time to respond thereto, pending resolution of Plaintiff's Declaration for Entry of Default (# 35).  Plaintiff's request for entry of default and Plaintiff's Motion to Stay have been denied in a separate Order.

On April 8, 2009, Plaintiff filed a Response to defendant Beane's Motion to Dismiss (# 36).  No further filings have occurred since that date.

### STANDARD OF REVIEW

The defendants have filed Motions to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In Bell Atlantic Corp v. Twombly, 550 U.S. 544, 560-563 (2007), the Supreme Court observed that a motion to dismiss should be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert

3

"detailed factual allegations," it must contain "more than labels
and conclusions" or a "formulaic recitation of the elements of a
cause of action."  Id. at 1964-65.

### PLAINTIFF'S ALLEGATIONS AND REQUESTS FOR RELIEF

Plaintiff has named as defendants Detectives Beane, Napier,
Taylor, Palmer and Armstrong, all of whom were working as part of
the Metropolitan Drug Enforcement Network Team ("MDENT"), in
Charleston, West Virginia, on May 12, 2005, and all of whom were
involved in Plaintiff's arrest and the search of two apartments
owned or occupied by Plaintiff on that date.  The residences were
located at 241 2nd Ave., Apt. B, South Charleston, West Virginia,
and 1319 Lee Street, East, Apt. 210, Charleston, West Virginia.

Plaintiff's arrest was made following two controlled buys
initiated by Plaintiff's girlfriend, Kendra Reed, who was working
as a confidential informant.  Shortly after the second controlled
buy, which occurred at Plaintiff's South Charleston apartment,
Plaintiff left in a vehicle with Ms. Reed, but was pulled over and
arrested by the defendants.  On his person at that time was $500 in
prerecorded money that had been used for the controlled buy, and an
additional $127, which was located in Plaintiff's wallet.

Following Plaintiff's arrest, Detective Beane obtained search
warrants for Plaintiff's two apartments, based, in part, upon
information provided by Ms. Reed.  In the warrant applications,
Detective Beane stated that Ms. Reed had told him that she had seen

4

6 ounces of cocaine in a filing cabinet in Petitioner's Lee Street apartment.  Plaintiff's Supplemental Complaint alleges that this information provided by Ms. Reed was false because Plaintiff did not permit Ms. Reed to go inside his Lee Street apartment.

The search warrants were issued by Kanawha County magistrate Carol Fouty.  During the search of Plaintiff's Lee Street apartment, the officers located and seized drugs, drug paraphernalia, $5,020 in United States Currency, and $319.57 in coins located in a jar.  Plaintiff was prosecuted on drug charges in this federal court.  According to Plaintiff's Supplemental Complaint, the money that was seized was converted into one or more cashier's checks and deposited into the United States Marshals Service Seized Assets Deposit Fund on June 5, 2005.  (# 5 at 9).

Through a separate civil forfeiture proceeding filed in this court, it was determined that the $127 found in Plaintiff's wallet was not turned over to the federal authorities, and that the federal authorities had not followed proper procedures for the civil forfeiture of any of the money seized from Plaintiff.  A judgment order making such findings was issued by the Honorable Robert C. Chambers on April 9, 2008.  (<u>United States v. $5,466.57, More or Less, in United States Currency</u>, Case No. 2:06-cv-1037 (S.D. W. Va.), # 38).  Since that time, all of the money seized from Plaintiff has been returned to him, along with a payment for accrued interest thereon.

Plaintiff's Supplemental Complaint alleges that the defendants "acted in bad faith" when they failed to turn over the $127 in U.S. Currency to the appropriate person having jurisdiction over the forfeiture proceedings.  Plaintiff further alleges that he was denied timely notice of forfeiture of any of the seized money under both state and federal law, in violation of his right to due process of law.

Plaintiff further alleges that the defendants "knowingly ma[de], used or caused to be made or used, a false record or statement to conceal the misappropriation of the $127," and that such conduct violated the False Claims Act, 31 U.S.C. §§ 3729-3733. (# 5 at 12).

Plaintiff's Supplemental Complaint further alleges as follows:

26.  Defendant Van Armstrong conspired with Kendra Reed the confidential informant (and known prostitute) for the purpose of depriving the Plaintiff of "Equal Protection of The Law" by conceading [sic; conceding] in an affidavit of the In Rem Warrant that this Plaintiff was known to the confidential informant and to MDENT of not having any legitimate income to substantiate the fact of having $5,000 in U.S. currency in order to justify a forfeiture of the illegal confiscation of the Plaintiff's money . . . . While in reality it was Kendra Reed (known prostitute) who didn't have a legitimate income and was coached and payed to lie with the $127.00 to fabulate [sic; fabricate] a story of seeing 6 ounces of cocaine in order to satisfy the prongs of a search warrant in violation of 42 U.S.C. § 1985(3).

27.  Defendant Fred Beane conspired with Kendra Reed for the purpose of depriving the Plaintiff "Equal Protection of The Law" by swearing in a search warrant of the Plaintiff's apartments that Kendra Reed had seen 6 ounces of cocaine in order to satisfy the prongs of a search warrant.  The cocaine was never found and Defendant Beane

6

knew that Kendra Reed wasn't a reliable witness and yet he negligently relied on her testimony in violation of 42 U.S.C. § 1985(3).

28. Defendant Palmer conspired with Kendra Reed and Andy Palmer (a relative of Detective Palmer who has very strong ties with local authorities and was also involved in a love triangle with Kendra Reed and the Plaintiff). Sergeant Palmer was the officer who had arrested Kendra in the past for prostitution and labeled her a "known prostitute." He knew she was my girlfriend and was angry with me and that she was also involved with his cousin And[y] Palmer. He knew she wasn't a reliable witness and yet took her word or even coached her to fabulate [sic; fabricate] a story of seeing a large amount of drugs at the Lee Street apartment, a place which had no nexus to the sale of crack a[t] 241 2nd ave. South Charleston. On the way to the South Charleston, West Virginia Police Station Det. Palmer called his cousin Andy Palmer and said "we just got your boy." This Defendant also violated my rights under Title 42 USC § 1985(3).

29. Defendant Taylor conspired with Kendra Reed for the purpose of depriving the Plaintiff "Equal Protection of The Law" [by] paying Kendra Reed or coaching her to lie about seeing six ounces of cocaine at the Lee Street Apartment, a place where she had not been. While the Plaintiff was being held at the South Charleston Police Department Det. Taylor tried to coerce the Plaintiff to consent to a search warrant at 1319 Lee Street apartment 210, East Charleston, West Virginia, a place which had no nexus to the crime of the sell [sic; sale] of crack cocaine at 241 Second Avenue, Apartment B, South Charleston, West Virginia. After this Plaintiff wouldn't sign a consent for a search at the Lee Street Apartment Sgt. Taylor went storming out of the South Charleston Police Department shouting that he was going to get a search warrant regardless of the fact I wouldn't sign a consent. He went and payed/coached Kendra Reed who was a (known prostitute) with no legitimate income to fabulate [sic; fabricate] a story of seeing 6 ounces of cocaine at the Lee Street Apartment to satisfy the prongs of a search warrant, also conspiring against the rights of a citizen in violation of Title 42 U.S.C. 1985(3). Kendra Reed had often boasted that she had police officers as clients who would do anything she asked.

7

30. Defendants Beane, Napier, Taylor, Palmer, Armstrong violated the Plaintiff's Fourth Amendment to the United States Constitution; the Uniform Controlled Substances Act; and the State of West Virginia Constitution by executing a defective search warrant which had misleading information (concerning Kendra Reed seeing six ounces of cocaine at the Lee Street apartment, when in fact she wasn't allowed to go there because of her previous stealing from the Plaintiff), without proper cause to search 1319 Lee Street Apartment 210, East Charleston, West Virginia, [a] place that didn't have a nexus to the sell [sic; sale] of crack cocaine at 241 Second avenue, Apartment B, South Charleston, West Virginia, not providing the Plaintiff with a receipt of the $319.57 in U.S. Coins, searching in the Plaintiff's closet through personal possessions looking for evidence of a crime, and violating the Plaintiff's Expectation of Privacy.

(# 5 at 13-16).

Plaintiff's Supplemental Complaint requests the following relief:

A declaration that the acts and omissions described herein violated Plaintiff's rights under the constitution and laws of the United States.

To sue each defendant in his individual and official capacity, jointly and severally, for the mental anguish of depriving the Plaintiff of being able to invest his money and having the inconvenience of having to pay the court cost to bring civil action to obtain his currency.

Award compensatory damages for mental anguish and deprivation of property of $500,000 against each defendant.

Award punitive damages in the amount of $500,000 against each defendant for violation of the Constitution of the United States of America, the Constitution of West Virginia and their oath to office to uphold the Constitution.

A jury trial on all issues triable by jury.

Plaintiff's cost of filing fees in the case of Campbell v. United States of America, Case No. 2:06-CV-00237.

Cost of this Civil Action.

Any additional relief this court deems just, proper, and equitable.

(Id. at 16-17).

## ANALYSIS

### The Defendants' Motions to Dismiss

On January 3, 2009, defendants Napier, Taylor, Palmer and Armstrong (hereinafter "the Charleston Defendants") filed a Motion to Dismiss (# 15) and a Memorandum of Law in support thererof (# 16). On March 9, 2009, defendant Beane filed a similar Motion to Dismiss (# 23) and a Memorandum of Law in support thereof (# 24). The defendants offer the following factual background:

> On May 11 and 12, 2005, Plaintiff, Freddy S. Campbell, sold crack cocaine to his girlfriend, Kendra Reed. See United States v. Campbell, No. 2:05-CR-120 (S.D. W. Va. Sept. 19, 2005)(guilty plea to violating 21 U.S.C. § 841(a)(1) by possessing with intent to distribute five grams or more of cocaine base)(attached as Ex. A). Notwithstanding that he had already been arrested for the sale of illegal drugs on more than one occasion, Campbell apparently did not realize that Ms. Reed was, at the time, working as a confidential information [sic; informant] for the police. [FN 1]
>
> [FN 1 - Campbell's 2005 drug sale came less than two years after having successfully pleaded with Judge Haden to terminate his supervised release early after serving a sixty-month sentence for selling cocaine in 1998, which itself occurred not long after his release for yet an earlier sale. See United States v. Campbell, No. 2:98-CR-127 (S.D. W. Va. Aug. 21, 2003)(terminating Campbell's supervised release because, inter alia, Campbell had engaged in "no additional criminal activity")(attached as Ex. B).]
>
> The police arrested Campbell. "At the time of the arrest [he] was in possession of $500 of prerecorded buy

money and an additional $127 in a wallet.  (Supp. Compl.
¶ 14.)   Based on Ms. Reed's statements, Magistrate []
Carol Fouty issued search warrants for two of Campbell's
residences.  (Supp. Compl. ¶ 14.)  According to Campbell,
"among things found in a filing cabinet . . . were drugs,
drug paraphernalia, and $5,020 of United States Currency
in five bundles." (Id.) "Also found . . . was a large
jar containing $319.57 in coins . . . ." (Id.)  See also
Campbell v. United States, No. 2:06-CV-237 (S.D. W. Va.
filed Mar. 30, 2006)(Pl.'s Memo. at 1-2)(attached as Ex.
C).  Campbell pleaded guilty, and the Court sentenced him
to nearly twelve years in prison.  See generally United
States v. Campbell, No. 2:05-CR-120 (S.D. W. Va. Dec. 5,
2005)(judgment).

     Although Campbell maintained that all of the money
was unrelated to his business selling drugs, the police
confiscated Campbell's drugs and money.   The United
States eventually proceeded against the money, but did so
in a procedurally defective manner.  See United States v.
$5,466.57, More or Less in United States Currency, No.
2:06-CV-1037 (S.D. W. Va. Apr. 9, 2008)(order)(attached
as Ex. D).  (See also Supp. Compl. ¶¶ 15-22.)  So Judge
Chambers ordered the $5,020 in cash and the roughly $320
in coins returned to Campbell.   On information and
belief, Defendants understand that the United States
complied with that order. [FN 2]

[FN 2 - Defendants do not understand Campbell to dispute
this fact.  The Court may, therefore, decide the instant
motion without going outside the corners of Campbell's
complaint.]

     The United States did not, however, obtain in rem
jurisdiction over the $127 before disposition of the -
1037 case.  See $5466.57.   So the federal government
returned that money to Defendants.   In an effort to
defuse another of Campbell's frivolous lawsuits - but
without in any sense admitting that Campbell is entitled
to so much as a penny of either the interest or principal
- on May 12, 2008, Defendants returned the $127 to
Campbell (see Supp. Compl. ¶ 23), and they have also now
caused a check for $19.08 [FN 3] to be paid to Campbell
contemporaneous with the filing of this motion. (see Ex.
E).

[FN 3 - The statute governing unsuccessful asset
forfeiture by the federal government specifies an amount

                          10

of interest to be paid along with the returned money. See 28 U.S.C. 2465(b)(1)(c)(ii). Defendants are unaware of any analogous provision applicable to the return of money initially seized under the West Virginia Contraband Forfeiture Act, W. Va. Code §§ 60A-7-701 to -707. The amount of $19.08 represents a figure more conservative than the federal statute would have required: 5% simple annual interest (higher than any annual average relevant treasury bill rate over the period) on $127 from May 12, 2005 (the day of the seizure (although the federal statute allows an additional 15 days after seizure, Defendants have not included that in their calculation)) through May 12, 2008,(the day Campbell's $127 was returned).

> As a result, all of the money taken from Campbell incident to his May 12, 2005, sale of crack cocaine has been returned to him with interest.

(# 16 at 2-3; # 24 at 2-3).

The Charleston Defendants' Memorandum further addresses Plaintiff's claims as follows:

> Plaintiff's Supplemental Complaint is a little unclear. Construing it liberally, Defendants believe that Plaintiff intends to claim the Defendants failed to deposit his $127 in an interest-bearing account, in remedy of which he would presumably be entitled to such lost interest as he has not been paid. (See Supp. Compl. ¶¶ 24-27.) Defendants also infer that Plaintiff intends to challenge the validity of his arrest or conviction or the search of his residences, or otherwise assail the fact that he is now incarcerated. (See id. ¶¶ 28-31 (alleging that the confidential information [sic; informant] was lying).) [FN 5]

> [FN 5 - Plaintiff has not specified whether he intends to sue the detectives in their individual or official capacities. In such cases, courts in this circuit follow the "course of proceedings" test to determine the capacity in which an official is being sued. Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995). Under that test, "the court must examine the nature of the plaintiff's claims, the relief sought and the course of the proceedings to determine whether a state official is being sued in a personal capacity." Id. Relevant

11

factors include: (1) whether the plaintiff fails to allege that the defendants' actions were "in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the fact [sic; face] of the complaint[;]" (2) whether the plaintiff seeks compensatory or punitive damages (which are unavailable in official capacity suits); and (3) "the nature of any defenses raised in response to the complaint is an additional relevant factor.  Because qualified immunity is available only in a personal capacity suit, the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally." Id. (citations omitted). Finally, courts should keep in mind "whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." Id. Here, Campbell has sued only individual defendants (but no entities or supervisors) for both compensatory and punitive damages, and he has not alleged conduct pursuant to a governmental custom or policy.  Accordingly, Defendants assume that Campbell only intended to sue them in their respective individual capacities.][1]

(# 16 at 4).[2]  Defendant Beane makes similar arguments in his Memorandum in Support of his Motion to Dismiss.  (# 24 at 3-4).

To the extent that Plaintiff is claiming that he was denied due process because the defendants did not follow the procedures specified in W. Va. Code §§ 60A-7-704 and -705 concerning the seizure and forfeiture of the $127 found in Plaintiff's wallet at

---

[1]  The request for relief section of Plaintiff's Supplemental Complaint indicates that he intended to sue the defendants in both their individual and official capacities.

[2]  The Charleston Defendants also read Plaintiff's Supplemental Complaint to not be disputing the handling of the $5,020 in U.S. Currency or the $310.57 in coins, as the United States, not these defendants, retained sole custody and jurisdiction over those amounts. The Charleston Defendants also assert that the False Claims Act does not apply in Plaintiff's case, as that act only governs false claims made against the United States by third persons.  (# 16 at 5 nn.6 and 7).  The undersigned will address these issues infra.

the time of his arrest, the defendants assert that this claim is moot because the $127 has been returned to Plaintiff with interest in an amount greater than that required by the comparable federal statute. (# 16 at 5; # 24 at 4).

The defendants further assert that Plaintiff's claims are barred by the two-year statute of limitations applicable to such claims brought under 42 U.S.C. § 1983. Both Memoranda assert:

> Plaintiff was arrested in May 2005, the date of his most recent sale of crack to the police. See Campbell v. United States, No. 2:06-CV-2037, slip. op. at 2-3 (S.D. W. Va. Feb. 13, 2008)(proposed findings and recommendations)(attached as Ex. F). Plaintiff filed the instant lawsuit in September 2008 - more than three years later. The statute of limitations on claims under 42 U.S.C. § 1983, however, is two years. See Owens v. Okure, 488 U.S. 235, 249-50 (1989)("We accordingly hold that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."); W. Va. Code § 55-2-12 (two years).

> The statute of limitations on Campbell's claims related to his arrest, search, seizure, or conviction all accrued on the date of his arrest. See Brooks v. City of Winston-Salem, NC, 85 F.3d 178, 182 (4th Cir. 1996). Likewise, the statute of limitations on Campbell's claims related to his money all accrued on or around the date that his money was taken.

> Accordingly, Plaintiff's § 1983 claims [and any other colorable tort claims] must be dismissed [as barred by the statute of limitations].

(# 16 at 6; # 24 at 4-5).

The defendants also assert that Plaintiff may not use this case to challenge his criminal conviction. The defendants contend that Plaintiff's Supplemental Complaint alleges that certain

13

aspects of his arrest, and the searches incident thereto, were
constitutionally invalid, by disputing the veracity of the
confidential informant. (# 16 at 6-7; # 24 at 5-6). The defendants
assert that such a claim is barred by the Supreme Court's decision
in <u>Heck v. Humphrey</u>, which held:

> [I]n order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for other
> harm caused by actions whose unlawfulness would render a
> conviction or sentence invalid, a § 1983 Plaintiff must
> prove <u>that the conviction or sentence has been reversed
> on direct appeal, expunged by executive order, declared
> invalid by a state tribunal authorized to make such a
> determination, or called into question by a federal
> court's issuance of a writ of habeas corpus</u> . . . .

512 U.S. 477, 487 (1994). The defendants assert that Plaintiff has
not met any of these conditions. (# 16 at 6-7; # 24 at 5).

After pleading guilty to one count of possession with intent
to distribute five or more grams of cocaine base, Plaintiff did not
file a direct appeal; nor has he challenged his conviction or
sentence through a Motion to Vacate, Set Aside or Correct Sentence
under 28 U.S.C. § 2255. <u>See</u> <u>United States v. Campbell</u>, 2:05-cr-
00120 (S.D. W. Va.) (Chambers, J.). Petitioner unsuccessfully
sought a downward departure of his sentence based upon his alleged
substantial assistance to the government (<u>id.</u>, ## 71, 72), and a
motion for modification or reduction of sentence based upon the
amendment of the Sentencing Guidelines regarding crack cocaine.
(<u>Id.</u>, ## 79, 80 and 97). The motion to modify or reduce sentence
was denied because Plaintiff was adjudged a career offender. (<u>Id.</u>,

14

# 97).  That decision was upheld on appeal, after the denial of a petition for re-hearing and re-hearing en banc.  (Id., ## 139, 140).  Thus, Plaintiff's criminal conviction has not been overturned or rendered invalid.

Finally, the defendants assert that any claim Plaintiff is making that challenges his arrest and the searches of his residences was waived as a result of his guilty plea.  The defendants cite to Tollett v. Henderson, which held:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

411 U.S. 258, 267 (1973).  Thus, the defendants assert that "all of Campbell's claims for damages resulting from his conviction fail to state a claim and must be dismissed."  (# 16 at 7; # 24 at 6).

## Plaintiff's Responses

Plaintiff's Response to defendant Beane's Motion to Dismiss states:

> Plaintiff avers the receiving of the $127 is not the issue, the issue is having to initiate Civil Action to receive what is guaranteed by the Fifth and Fourteenth Amend. of the U.S. Constitution; and the West Virginia [C]ontraband Forfeiture Act, W. Va. Code §§ 60A-7-701; and Article III Bill of Rights, Sec. 10 of the West Virginia Constitution.  Clearly, this Plaintiff['s] "Due Process of Law" has been violated by Det. Fred Beane by not turning over the money to the proper authorities who would had [sic; have] assured this Plaintiff with timely notice.

15

(# 36 at 2).  In both of his Responses to the defendants' Motions
to Dismiss, Plaintiff asserts that the defendants knew of the
confiscated $127 and did not turn it over to the proper
authorities, as required by either the state or federal laws
pertaining to asset forfeiture.  Plaintiff further accuses the
defendants of keeping the $127 and using it to pay the confidential
informant to lie about drugs she allegedly saw in his Lee Street
apartment.  Plaintiff's Responses assert that this conduct violated
both his Fourteenth Amendment right to due process and his Fourth
Amendment right to a reasonable expectation of privacy.  In both of
his Responses, Plaintiff further asserts:

> Fundamental requirements of due process is an opportunity
> to be heard in a meaningful time, in a meaningful manner,
> U.S.C.A. Const. Amend. 14, <u>Prestera Center for Mental
> Health Serv. v. Lawton</u>, 11 F. Supp. 2d 768 (S.D. W. Va.
> 2000).

(# 20 at 5; # 36 at 2).

Plaintiff further asserts that his claims are timely because
the statute of limitations did not begin to run until the District
Court entered its order on April 9, 2008, finding that the $127 in
U.S. Currency had not been turned over to the U.S. Marshals Service
with the other currency and coins.  Plaintiff also claims that "the
issue of the search warrant was never brought up, nor the issue of
the confiscated currency and coins in the Plaintiff's criminal
proceedings.  Therefore, discovery of the Plaintiff's Fourth
Amendment and due process violations was prevented from discovery

16

until the Government attempted to use the defective search warrant for an In Rem Forfeiture on December 12, 2007." (# 36 at 5). Plaintiff further states:

> Assuming that a tort of outrageous [sic; outrage] claim[] can arise from the bringing of a lawsuit, the two-year limitations period begin[s] to run on the date of the last extreme and outrageous conduct. W. Va. 55-2-12(b); Restatement (Second) of Torts, 40(1), 46 comment, <u>McCammon v. Oldaker</u>, 1999, 515 S.E.2d 38, 2005 W. Va. 24.
>
> In the instant case, the defective search warrant was on May 12, 2005, which [was] clearly outside the statute of limitations. But it was the outrageous conduct of using a defective search warrant to obtain the "In Rem Complaint" on December 12, 2007. A search warrant that relied on the perjured sworn statement of Kendra Reed of seeing 6 ounces of cocaine at 1319 Lee St. when in fact she hadn't been there, nor seen 6 ounces of cocaine. Detective Fred Beane knew Kendra Reed was a "Known prostitute" and was not a reliable witness. (See Plaintiff's Exhibit A). He also knew that Kendra Reed was involved in a love triangle with the Plaintiff and Andy Palmer, a cousin of one of the arresting officers, Sgt. Palmer, the officer who had arrested Kendra in the past and labeled her a "known prostitute." * * * Fred Beane knew Kendra was angry with me for telling her I could no longer enable her addiction by providing her food and shelter. He used the lost $127 to pay Kendra to lie on the search warrant thus conspiring against the Plaintiff.
>
> * * *
>
> The Misfeasance and/or no[n]feasance act of Detective Fred Beane occurred on May 12, 2005, however, under the discovery rule, a statute of limitation is tolled and does not begin to run until a claimate [sic; claimant] knows or by reasonable diligence should know of his claims. [Citation omitted].
>
> In the instant case the Plaintiff didn't have a claim of Fourth Amendment, and conspiracy until after December 12, 2007, when it became first known that the Government was going to use the defective search warrant in the In Rem Warrant. The defective search warrant was

> used solely for the In Rem Warrant only.  Also it wasn't
> known until then the $127 had been lost (paid to Kendra
> Reed to lie) and had not been turned over to the U.S.
> Marshals, nor any state authorities who would have
> provided the Plaintiff with a timely notice, which is
> required by the Due Process Clause of Federal and State
> of West Virginia Constitution[s].

(# 36 at 5-7).

Plaintiff further asserts that the conduct of the defendants constitutes a "continuing wrong" under the "Continuous Tort Doctrine."  Specifically, Plaintiff states, "Plaintiff avers the tortous [sic; tortious] conduct didn't cease on May 12, 2005 as counsel for Detective Beane concedes.  The conduct didn't cease until the forfeiture "In Rem" complaint had been finalized on April 9, 2008, in which this Plaintiff prevailed, and is within the two (2) years statute of limitations."  (# 36 at 8).  Plaintiff makes similar arguments in his other Response (# 20 at 6-8).

Finally, Plaintiff objects to the defendants' argument that Plaintiff is actually challenging his criminal conviction through this civil action.  In his Response to defendant Beane's Motion to Dismiss, Plaintiff states:

> Plaintiff avers these claims arise from a defective
> state search warrant which was material in the obtaining
> [of] an "In Rem" warrant.  Also there is a claim [of]
> conspiracy and due process of law which hasn't anything
> to do with the Plaintiff's Criminal Conviction.  The
> Search warrant was issued by West Virginia State
> Magistrate Judge [sic; magistrate] the Honorable Carol
> Fouley [sic; Fouty], who is not a "Magistrate Judge with
> authority in the District."  Therefore this Plaintiff
> avers the state search warrant was never brought into
> federal jurisdiction concerning the criminal proceedings,
> and was used solely for the "In Rem" Warrant on December

18

> 12, 2007. Consequently, this Plaintiff wasn't indicted
> from the poisonous fruits of the defective search warrant
> which was issued for ..... 1319 Lee Street, Apt. # 210,
> East Charleston, West Virginia (See Plaintiff's EXH. D).
>
> The Plaintiff further avers I pleaded guilty to
> count one (1) of a three (3) count indictment, which not
> any of the three counts charged this Plaintiff with the
> poisonous fruits of the search warrant from the Lee
> Street Apt. (See Plaintiff's EXH. E).
>
> Therefore, defendant Fred Beane's claims that all of
> the Plaintiff's claims for damages resulting from my
> criminal conviction is erroneous since the search warrant
> was solely used for the "In Rem" complaint.

(# 36 at 8-9). Plaintiff also asserts that his claims are not

barred by the decision in Heck v. Humphrey. He states:

> In the instant case this Plaintiff has been caused
> compensable injury do [sic; due] to the fact the
> defective search warrant of 1319 Lee Street, East[,]
> Charleston[,] West Virginia[,] a place which had no nexus
> to the sell [sic; sale] of Crack cocaine to the
> confidential informant, and the searching of areas not
> mentioned in the warrant, and also U.S. coins which was
> not in the inventory sheet, was material in the
> confiscation of my money in which this Plaintiff had to
> endure the hardship of mental anguish of being deprived
> of my money and the inconvenience of initiating two (2)
> civil actions. Not any of the currency was brought into
> the jurisdiction of the federal court in the criminal
> proceedings, and would have no effect on the validation
> of the criminal conviction what so ever, due to the fact
> this Plaintiff entered a guilty plea.
>
> In the case at bar this Plaintiff never asked for
> relief, to vacate or set aside the judgment of his
> criminal conviction, therefore a victory in this civil
> action would not require the invalidation of the criminal
> conviction.

(# 36 at 10-11). Plaintiff also asserts that the defendants

misconstrued the applicability of the Tollett case in this matter.

He states:

19

In the instant case the indictment and guilty plea wasn't
in relation to the poisonous fruits of the defective
State search warrant and would have no affect upon the
validity of my criminal conviction.    Therefore the
defendants['] claim of invalidating my criminal
conviction should be dismissed.

A   guilty   plea   waives   non   jurisdictional
constitutional rights such as a right to a jury trial,
the right to confront one's accusers, and the privilege
against self-incrimination.    A guilty plea may waive
claims of illegal search and seizure, coerced confession,
improper grand jury selection, denial of a speedy trial,
as  well  as  entrapment  defense  and  prosecutorial
misconduct.    A  guilty  plea  does  not  foreclose  a
subsequent claim by the defendant under 42 U.S.C. § 1983
because such issues are not "necessarily determined in a
criminal proceeding[."] Therefore Defendant Fred Beane's
claim is moot.

(Id. at 9).   Plaintiff repeats all of these arguments in his

Response to the Charleston Defendants' Motion to Dismiss. (# 20 at

9-10).

### Defendants' Reply

The Charleston Defendants filed a Reply brief on February 25,

2009. (# 21).  In addition to the arguments previously made about

the Plaintiff's due process claim being moot as a result of the

return of Plaintiff's $127, with interest, the Charleston

Defendants further state:

In the -1037 case order, the Court found "the Government
had 'reasonable cause' pursuant to 28 U.S.C. § 2456 [sic;
2465](a)(2) to seize the $127 . . . ." United States v.
$5,466.57, More or Less in United States Currency, 2:06-
CV-1037,    at    *20    (S.D.    W.    Va.    Apr.    9,
2008)(order)(attached to Mot. as Ex. D).  The court went
on to determine that it did not have in rem jurisdiction
over the $127 and ordered that AUSA return the $127 to
the State, noting that Campbell could "request its return
from the State." Id. at 19.

* * *

>    Furthermore, and more importantly for the instant motion,
>    the Court's previous finding of "reasonable cause" for
>    the seizure or arrest insulates "the person who made the
>    seizure or arrest . . . [from] suit or judgment."  28
>    U.S.C. § 2465(a)(2).  Thus, the claim against the
>    Charleston Defendants is moot and the Charleston
>    Defendants are immune from it (and the statute of
>    limitations bars the claim no matter what).

(# 21 at 2).

The Charleston Defendants further dispute that Plaintiff can

make any showing of a "continuing wrong" that would toll the

statute of limitations.  Their Reply states:

>    This is also not a "continuing wrong" case, but-if
>    anything-continuing damage (i.e., accrued interest)
>    flowing from an alleged wrong (i.e., the wrongful taking
>    of money or the failure to deposit it in an interest-
>    bearing account) that happened more than the statute of
>    limitations period before Campbell filed his complaint.
>    In such cases, the statute of limitations does not toll.
>    [footnote omitted].

(Id. at 3).  Finally, the Charleston Defendants reassert their

argument that Plaintiff is challenging the validity of his arrest

and conviction.  They state:

>    Campbell's argument in this regard ([# 20] at 9-12)
>    apparently is that his challenge to the veracity of the
>    informant, etc., ultimately goes to the validity of the
>    warrant used to search his residences (see id.), which in
>    turn somehow infected the seizure of the $127, which he
>    then characterizes as fruit of an illegal search, and
>    thus that this somehow means that the Court "must make a
>    threshold question of the impact [] this Plaintiff's
>    claims might have on his criminal conviction" (id. at 10
>    (citing Heck v. Humphrey, 512 U.S. 477 (1994)).  All this
>    does is show Campbell's real argument: His arrest was
>    illegal.

21

Defendants have already laid this argument to rest. Although Campbell tries to transmute the argument into one for a claim of an illegal search, he then admits that the only harm he allegedly suffered was "the confiscation of my money in which [he] had to endure the hardship of mental anguish of being deprived of [his] money and the [inconvenience] of initiating two (2) civil actions." (<u>Id.</u> at 11).  As noted, however, this is "harm" for which he has been fully reimbursed.  And again, in any event, he has not alleged that the <u>Charleston Defendants</u> did anything wrong in arresting him; his allegations in this regard are directed solely at a non-movant, Defendant Beane.

(<u>Id.</u> at 3-4).

<u>Plaintiff's Complaint Fails to State a Cognizable Claim</u>

Plaintiff's claims are incredibly confusing and appear to combine a number of issues.  However, the undersigned's review of the pleadings in this case demonstrates that Plaintiff's claims boil down to two issues.  First, that the $127 seized from Plaintiff, incident to his arrest, was not turned over to the proper authorities, and the proper procedures for the forfeiture of that $127 were not employed under either State or Federal law. Second, Plaintiff claims that defendant Beane used allegedly false information from a confidential informant, whom Plaintiff claims to have questionable credibility, to obtain a search warrant for the search of one of Plaintiff's residences where additional drugs, drug trafficking paraphernalia, and money were found. Specifically, Plaintiff claims that Ms. Reed stated that she knew that there was 6 ounces of cocaine inside Plaintiff's apartment at 1319 Lee Street, East, in Charleston, West Virginia, when Ms. Reed

22

had not actually been inside that apartment or seen 6 ounces of cocaine base. Plaintiff further claims that this false information in the search warrant application was then used by the United States Government in support of its Verified Complaint of Forfeiture in rem for the subject money.

There are numerous problems with Plaintiff's claims. First, Plaintiff's money has been returned to him, with a payment of interest. Second, if Plaintiff believed that the applications for the search warrants for one or both of his residences contained false information, during his criminal proceedings, he should have filed a Motion to Suppress, or requested a hearing under Franks v. Delaware, 438 U.S. 154 (1978), to challenge the veracity of the information contained in the warrant applications. Although Plaintiff did file a Motion to Suppress in his criminal case, the motion only argued that the search warrants in his case were not issued in accordance with Federal Rule of Criminal Procedure 41, because a state magistrate issued the warrants. (United States v. Campbell, No. 2:05-cr-00120, # 29). The Motion to Suppress did not in any way challenge the veracity of the confidential informant or any other information contained in the search warrant applications themselves. (Id.)

Moreover, even if Plaintiff had challenged the veracity of the warrant applications, his current assertion that the Lee Street apartment had no nexus to his drug sales, and that, therefore,

23

there was no probable cause to search that residence, lacks merit. When Ms. Reed contacted Plaintiff to arrange for the second controlled purchase on May 12, 2005, Plaintiff told her he only had two packets of crack cocaine on him, but he would go pick up more. The police, who were conducting surveillance of Plaintiff, and were recording Ms. Reed's conversations with Plaintiff, then followed Plaintiff from his South Charleston apartment to his Lee Street apartment.  When Ms. Reed called him a second time, Plaintiff stated that he was returning to the South Charleston apartment with the drugs.  The police then followed Plaintiff back to his South Charleston apartment, where Plaintiff made the second controlled buy with Ms. Reed.

Notwithstanding Ms. Reed's allegedly false statement that she had seen six ounces of cocaine in Plaintiff's Lee Street apartment, Plaintiff's statement to Ms. Reed that he needed to go get more drugs, followed by his trip to the Lee Street apartment and his return to the South Charleston apartment just before the controlled buy, and the common understanding and belief that drug dealers tend to store drugs in their residences, was sufficient to establish probable cause for a search warrant for the Lee Street apartment. Therefore, Plaintiff cannot establish a valid Fourth Amendment claim on this basis.

What is more, to the extent that Plaintiff is challenging the seizure and attempted forfeiture of the $127, that money was found

24

on his person at the time of his arrest, and was not subject to seizure under the search warrants. Thus, it was not unconstitutionally seized. See United States v. Robinson, 414 U.S. 218 (1973)(search incident to a lawful arrest may be conducted without a warrant). Plaintiff cannot establish a Fourth Amendment violation on this basis.

Furthermore, when Plaintiff chose to plead guilty to possession with intent to distribute five or more grams of cocaine base, as stated in Count One of the indictment, he waived the right to challenge antecedent defects or violations. Thus, Plaintiff waived his right to challenge the information contained in the search warrant applications. Therefore, to the extent that Plaintiff is now challenging the veracity of the confidential informant, and the information contained in the search warrant applications, he is barred from doing so.

Plaintiff contends that he is challenging the use of the information in the search warrant documents in support of the United States' Verified Complaint of Forfeiture in rem, and that such conduct somehow violated Plaintiff's Fourth Amendment rights. Because Plaintiff cannot establish a cognizable Fourth Amendment claim based upon the search warrants and the searches themselves, he also cannot demonstrate a Fourth Amendment violation based upon the use of the information in the search warrant applications to support the United States' forfeiture complaint.

Moreover, as noted by the defendants, 28 U.S.C. § 2465(a)(2) provides immunity to the defendants who made the seizures.  That section states:

> if it appears that there was reasonable cause for the seizure or arrest, the court shall cause a proper certificate thereof to be entered and, in such case, neither the person who made the seizure or arrest nor the prosecutor shall be liable to suit or judgment on account of such suit or prosecution, nor shall the claimant be entitled to costs, except as provided in subsection (b).

28 U.S.C. § 2465(a)(2).  Thus, the defendants herein are immune from any suit based upon the searches and seizures and the subsequent forfeiture proceedings.

Plaintiff's Supplemental Complaint also fails to state a cognizable claim under the False Claims Act, 31 U.S.C. §§ 3729-3733.  As noted by the Charleston Defendants, the False Claims Act governs claims made against the United States by third persons.  The False Claims Act is inapplicable here.

Plaintiff's Supplemental Complaint also fails to state a cognizable claim under 42 U.S.C. § 1985(3).  That section provides:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as

26

> an elector for President or Vice President, or as a
> Member of Congress of the United States; or to injure any
> citizen in person or property on account of such support
> or advocacy; in any case of conspiracy set forth in this
> section, if one or more persons engaged therein do, or
> cause to be done, any act in furtherance of the object of
> such conspiracy, whereby another is injured in his person
> or property, or deprived of having and exercising any
> right or privilege of a citizen of the United States, the
> party so injured or deprived may have an action for the
> recovery of damages occasioned by such injury or
> deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

Although Plaintiff's Supplemental Complaint alleges that the various defendants conspired with Kendra Reed and others to effectuate his arrest and the search of his residences, it fails to allege a class-based conspiracy which is a necessary prerequisite to sustaining liability under section 1985. Plaintiff has not alleged or established a race or class-based animus or discrimination. See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263 (1993). At most, Plaintiff has alleged that the defendants' conduct was motivated by an alleged love triangle that involved Plaintiff, Kendra Reed and a relative of one of the arresting officers. Plaintiff's allegations are not sufficient to establish a basis for liability under section 1985.

Finally, to the extent that Plaintiff is attempting to sue the defendants in their official capacities, his claims also fail because Plaintiff has not sufficiently alleged or established a governmental policy or custom that resulted in the violation of Plaintiff's constitutional rights.

27

For all of these reasons, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Supplemental Complaint fails to state a claim upon which relief can be granted. Because the undersigned has proposed that the presiding District Judge find that Plaintiff's Complaint fails to state a claim upon which relief can be granted, the undersigned has not addressed the statute of limitations issue.

<u>**RECOMMENDATION**</u>

It is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motion to Dismiss filed by defendants Napier, Taylor, Palmer and Armstrong (# 15), **GRANT** the Motion to Dismiss filed by defendant Beane (# 23), and dismiss this matter from the court's docket with prejudice.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of

28

this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff and to transmit a copy to counsel of record.

_____June 22, 2009_____
            Date

                        _Mary E. Stanley_
                        Mary E. Stanley
                        United States Magistrate Judge